**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Shalana Satterwhite | : | CASE NO. |
| 1566 Saddle Brook Lane, Unit 2C | | |
| Westlake, OH 44145 | : | |
| Plaintiff | : | JUDGE |
| -vs- | : | **PLAINTIFF SATTERWHITE'S COMPLAINT WITH JURY DEMAND ENDORSED HEREIN** |
| | : | |
| Cleveland Metropolitan School District | | |
| 1380 East Sixth St. | : | |
| Cleveland, OH 44114 | | |
| | : | |
| Defendant. | | |

\* \* \* \* \*

Now comes Plaintiff, Shalana Satterwhite ("Plaintiff Satterwhite"), by and through counsel, with claims against the Cleveland Metropolitan School District ("Defendant CMSD") as set forth below.

**INTRODUCTION AND THE PARTIES**

1. This is an employment action brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), with supplemental Ohio state law contract and tort claims.

2. Plaintiff Satterwhite is a resident of the State of Ohio, residing at 1566 Saddle Brook Lane, Unit 2C, Westlake Ohio 44145.

3. At all times relevant to this lawsuit, Plaintiff Satterwhite was an "employee" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(f).

Mulhall|Law, LLC

4. Defendant CMSD is an Ohio School District in good standing with its principal place of business located at 1111 Superior Avenue East, Suite 1800, Cleveland, Ohio 44114.

5. At all times relevant to this lawsuit, Defendant CMSD was Plaintiff Satterwhite's "employer" within the meaning of 42 U.S.C. § 2000e(b).

### VENUE, PERSONAL JURISDICTION AND PROCEDURAL REQUIREMENTS

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because Plaintiff Satterwhite is alleging claims that arise under the laws of the United States.

7. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367 because the entire action before the Court compromises one civil rights case, and the claims arise out of the same common nucleus of facts and are such that Plaintiff Satterwhite would ordinarily be expected to try them in one judicial proceeding.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because it is the federal district court for the district, division and county within which Defendant CMSD operates its business and where the facts giving rise to this lawsuit took place.

9. On May 9, 2016, Plaintiff Satterwhite filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-206-00991.

10. Plaintiff Satterwhite received a Notice of Right to Sue from the Civil Rights Division of the U.S. Department of Justice in connection with EEOC Charge No. 532-206-00991 on April 18, 2017. *Exhibit 1*.

11. This action is timely and appropriate pursuant to 42 U.S.C. §e-f(5) because it is filed within ninety days of receipt of the Notice of Right to Sue.

Mulhall Law, LLC

## GENERAL ALLEGATIONS

12. From in or about May 2014 to on or about March 19, 2017, Defendant CMSD employed Plaintiff Satterwhite as a Mobile Deputy/Police Officer.

13. At all times relevant to this lawsuit, Plaintiff Satterwhite held the position of Mobile Deputy/Police Officer and was qualified for that position.

14. Plaintiff Satterwhite is a female citizen of the United States.

15. In or about June 2015, Plaintiff Satterwhite filed a Charge of Discrimination against Defendant CMSD with the EEOC, Charge No. 532-2015-01987, alleging certain violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.

16. EEOC Charge No. 532-2015-01987 was settled in mediation facilitated by the EEOC in December 2015 (the "Settlement").

17. Plaintiff's filing of EEOC Charge No. 532-2015-01987 constituted protected activity within the meaning of 42 U.S.C. § 2000e-3(a).

18. Following the Settlement, Plaintiff Satterwhite was immediately subjected to materially adverse employment actions by Defendant CMSD in direct retaliation for her participation in the protected activity set forth in paragraphs 15-17.

19. Following the Settlement, Defendant CMSD breached its obligations under the Settlement it reached with Plaintiff Satterwhite, including but not limited to its obligation that "there shall be no discrimination or retaliation of any kind against [Plaintiff Satterwhite] as a result of filing the subject charge."

20. In January 2016, immediately following the Settlement, Plaintiff Satterwhite's supervisors and peers engaged in a purposeful campaign of harassment intended to punish Plaintiff Satterwhite as a direct result of her filing an EEOC Charge.

Mulhall Law, LLC

21. Following the Settlement, Plaintiff Satterwhite's immediate supervisor, Sergeant Jacomdamius Lee, was encouraged by Plaintiff Satterwhite's other superiors within the CMSD Safety and Security Department (the "Department") to "let her fail" because they wanted to punish Plaintiff Satterwhite for bringing an EEOC charge against the Department and to force her out of her job.

22. Following the Settlement, Sergeant Jacomdamius Lee was instructed by Lieutenant Terry Wheeler to avoid providing law enforcement training to Plaintiff Satterwhite such as taking her out on patrol.

23. Following the Settlement, Plaintiff Satterwhite was assigned on a full-time basis to security duty positions that did not require a police officer, which were shift assignments that normally rotated for all other Department police officers because the assignments did not require a fully qualified law enforcement officer and did not provide any career advancement or training opportunities.

24. On or about January 19, 2016, Plaintiff Satterwhite was asked to attend a meeting with her superiors after morning roll call where she was reprimanded for asking too many questions and the superiors asked whether Defendant CMSD would need to use "kid gloves" to deal with Plaintiff Satterwhite, to which Plaintiff Satterwhite responded that she wanted to be treated equally.

25. In January 2016, Plaintiff Satterwhite's supervisors also encouraged an environment wherein Plaintiff Satterwhite's male peers were permitted to isolate and mock her without discipline, including repeated statements made by other male officers to Plaintiff Satterwhite that she should "just quit."

Mulhall Law, LLC

26. On or about January 27, 2016, Officer Martin Carrion spoke with Sergeant Kevin Oliver and accused Plaintiff Satterwhite of having failed to respond to a dispatched call at James Fords Rhodes School without any basis in fact when Plaintiff Satterwhite had, as supported by taped radio calls, responded to the call and Officer Martin Carrion was never disciplined for this false accusation.

27. In or about January 2016, officers within the Department were permitted to circulate a petition for signature that called Plaintiff Satterwhite out by name and which criticized her for the duties she was assigned to as a result of the terms that Defendant CMSD had agreed to in connection with the Settlement.

28. On February 1, 2016, Plaintiff Satterwhite filed an internal complaint for "harassment/retaliation/hostile work environment against CMSD Safety and Security" as a result of the various actions that were taken against her at work in the month following the Settlement.

29. On February 2, 2016, the very next day after Plaintiff Satterwhite filed her internal complaint, Plaintiff Satterwhite's supervisors selectively targeted her and sought an opportunity to impose discipline, not in keeping with normal policy enforcement, in connection with student-confiscated "brass knuckles" that they were able to uncover in her locked patrol car at the end of her shift.

30. Sergeant Kevin Oliver alleged that the brass knuckles should have been immediately "logged" as evidence by Plaintiff Satterwhite in accordance with Department policy.

31. In front of Sergeant Jacomdamius Lee, Sergeant Kevin Oliver went as far as to instruct Officer Lynn Wyatt to research possible criminal charges that could be used against Plaintiff

Mulhall Law, LLC

Satterwhite in connection with the brass knuckles incident, which was a directive that came from Lieutenant Terry Wheeler.

32. Department officers, including Sergeant Kevin Oliver himself, routinely left major evidence, including drugs, in patrol cars or out on desks without logging such evidence immediately and without facing any discipline prior to and after the brass knuckles incident that targeted Plaintiff Satterwhite.

33. On April 7, 2016, Defendant CMSD issued a "WRITTEN REPRIMAND" signed by Chief Lester Fultz in connection with the brass knuckles incident stating that Plaintiff Satterwhite had been "found in violation of the Rules and Regulations of the Safety and Security Department[,]" including a finding of "improper conduct" and a notation that the reprimand would be placed in Plaintiff Satterwhite's personnel file and could be used as a factor in calculating future discipline against her. *Exhibit 2*.

34. During the time period between February 2, 2016 and April 7, 2016, complaints were made to Department superiors about other male officers failing to log evidence that did not result in the type of discipline that Plaintiff Satterwhite was subjected to.

35. During the time period between February 2, 2016 and April 7, 2016, Department superiors were made aware of complaints against other male officers for other violations of Department policies that did not result in the type of discipline that Plaintiff Satterwhite was subjected to.

36. In April 2016, Lieutenant Terry Wheeler, with the knowledge of Chief Lester Fultz, assigned Plaintiff Satterwhite to a new patrol region in violation of the terms of the Settlement agreement.

Mulhall Law, LLC

37. In or about April 2016, Lieutenant Terry Wheeler gave an order that Plaintiff Satterwhite was not allowed to ride in the same patrol car as another female officer and former partner of Plaintiff Satterwhite, Lynn Wyatt, even though no formal or informal Department policy precluded two qualified female officers from riding together and two male officers were still permitted to ride together.

38. Lieutenant Wheeler issued the order precluding Plaintiff Wyatt from riding in the same patrol car as Officer Lynn Wyatt because of Plaintiff Satterwhite's gender and stated to other supervisors that the reason for the order was that he didn't want the two women talking to each other.

39. On or about April 27, 2016, Plaintiff Satterwhite filed a union grievance against Defendant CMSD in connection with her assignment to the new patrol region.

40. On or about April 28, 2016, Plaintiff Satterwhite filed an internal complaint for unfair gender treatment, discriminatory harassment and retaliation.

41. On May 9, 2016, Chief Lester Fultz was present at a Step Two union grievance hearing on behalf of Defendant CMSD and became angry once a decision was rendered in Plaintiff Satterwhite's favor consistent with the terms of the Settlement and stood up and said to Plaintiff Satterwhite, "Is there anything else you want Satterwhite?  Is this over?  Can I go?" and then left the room.

42. On August 1, 2016, an investigator for Defendant CMSD issued a letter to Plaintiff Satterwhite in connection with the results of the investigation and interviews into the internal complaint that Plaintiff Satterwhite filed on April 28, 2016, concluding that there was "no evidence" to substantiate Plaintiff Satterwhite's claims, and further, the investigation did not yield "any evidence" that Defendant CMSD's Policy Prohibiting Sexual Harassment,

Mulhall Law, LLC

Harassment and Discrimination and Title IX Grievance Procedures had been violated and the file was closed.

43. Following Plaintiff Satterwhite's April 28, 2016 complaint, several officers provided testimony to Defendant CMSD's investigator consistent with the facts alleged in this Complaint, none of which was cited as "some evidence" supporting Plaintiff Satterwhite's complaint.

44. Despite the closure of Plaintiff Satterwhite's internal complaint file, gender-based harassment and retaliatory actions continued to occur against Plaintiff Satterwhite within the Department through March 2017, perpetuating an unsafe and hostile work environment where Plaintiff Satterwhite was told that male officers would not provide her with backup on calls and where Plaintiff Satterwhite was subjected to disparate scrutiny of her every action in order to build up a personnel file that would help to push her out of the Department and tarnish her record as a police officer.

45. On March 6, 2017, the pressure on Plaintiff Satterwhite had grown to the point that she feared that the Department's atmosphere—one where officers were encouraged or permitted to research criminal charges against her, not provide backup on calls, fill her personnel file with infractions and subject her to nonstop harassment—was too risky and she was forced to resign from her position citing "ongoing harassment [and] safety issues within my Department" as the reason for securing a new position as a police officer at Lakeland Community College.

46. At one point Plaintiff Satterwhite reconsidered her decision to leave in favor of returning to the Department in order to not let the Department get away with its retaliation against her,

Mulhall Law, LLC

but she was told that Chief Lester Fultz stated to a union representative that he would not hire Plaintiff Satterwhite back because he viewed her as "troubled."

47. Despite her resignation, the harassment from Defendant CMSD continued into her new position at Lakeland Community College.

48. On May 19, 2017, the same investigator for Defendant CMSD who stated in August 2016 that there was "no evidence" to support Plaintiff Satterwhite's harassment and retaliation claims, sent a lawful public records request to Plaintiff Satterwhite's new employer requesting her personnel file, but also referenced Plaintiff Satterwhite's "*separation from service* with the College, if any[, . . .] and any electronic or other written communications related to her employment or *discharge* [and . . . m]y understanding is that Officer Satterwhite may have only been employed with the College *for a short time*[.]" (emphasis added).

49. Plaintiff Satterwhite was never discharged from her at-will position at Lakeland Community College and presently works rotating shifts for this employer.

50. Plaintiff Satterwhite was confronted by her new superiors at the Lakeland Community College police department regarding the public records request and wondered why they would receive such a request, causing Plaintiff Satterwhite intense anxiety and emotional distress.

51. Plaintiff Satterwhite has sought treatment for what has since been diagnosed as emotional distress caused by her time working for Defendant CMSD.

## COUNT I – TITLE VII RETALIATION

52. Plaintiff Satterwhite re-alleges and incorporates herein by reference each and every allegation set forth in the foregoing paragraphs as if fully rewritten.

9

Mulhall Law, LLC

53. Plaintiff Satterwhite's filing of EEOC Charge No. 532-2015-01987 was protected activity under Title VII.

54. Defendant CMSD knew of Plaintiff Satterwhite's protected activity.

55. Plaintiff Satterwhite suffered adverse employment action when she was issued a written reprimand by Chief Fultz on April 7, 2016.

56. Plaintiff Satterwhite suffered adverse employment actions when her supervisors created and encouraged a hostile and unsafe work environment for Plaintiff Satterwhite immediately after the Settlement, including instructions to "let her fail," to selectively enforce policies against her, and to allow an environment where officers were permitted to openly state that they would not provide her with backup on calls.

57. Plaintiff Satterwhite suffered adverse employment actions when she was constructively discharged from her position with Defendant CMSD and subsequently told she could not be hired back because she was a "troubled" employee.

58. Plaintiff Satterwhite suffered adverse employment actions when Defendant CMSD breached the terms of the Settlement agreement.

59. There is a causal connection between Plaintiff Satterwhite's protected activity and the adverse employment actions taken against her.

60. Defendant CMSD has therefore retaliated against Plaintiff Satterwhite due to her exercise of rights under Title VII.

61. As a result of Defendant CMSD's actions, Plaintiff Satterwhite has lost income, potential for future income, wages, benefits, incurred costs and expenses of this lawsuit (including attorney fees and costs), and was otherwise injured.

Mulhall Law, LLC

62. Defendant CMSD, through the actions of its agents acting within the scope of their employment, willfully violated Title VII and lacked good faith and/or reasonable grounds to believe it was not violating Title VII by taking adverse employment actions against her as alleged in this Complaint.

## COUNT II – TITLE VII GENDER DISCRIMINATION

63. Plaintiff re-alleges and incorporates herein by reference each and every allegation set forth in the foregoing paragraphs as if fully rewritten.

64. Defendant CMSD through its agents engaged in a pattern and practice of discrimination against Plaintiff Satterwhite with respect to the terms, conditions and privileges of employment because of Plaintiff Satterwhite's gender in violation of 42 U.S.C. § 2000e-2.

65. Plaintiff Satterwhite was a member of a protected class and was qualified for her position as a Mobile Deputy/Police Officer.

66. Plaintiff Satterwhite suffered adverse employment actions as set forth herein, including but not limited to purposeful denial of training opportunities afforded to male officers, inability to ride with other similarly-qualified female officers in patrol vehicles, heightened disciplinary scrutiny and a management culture that tolerated supervisors stating that a woman should be treated with "kid gloves" and that officers should "let *her* fail."

67. Similarly situated males were not treated this way and were allowed to ride together in police vehicles, were provided with ample training opportunities, were not similarly disciplined for minor policy infractions, and were permitted to openly use "locker room talk" during roll calls and while on duty.

Mulhall | Law, LLC

68. As a result of Defendant CMSD's actions through its agents, Plaintiff Satterwhite has lost income, potential for future income, wages, benefits, incurred costs and expenses of this lawsuit (including attorney fees and costs), and was otherwise injured.

69. Defendant CMSD, through the actions of its agents acting within the scope of their employment, willfully violated Title VII and lacked good faith and/or reasonable grounds to believe it was not violating Title VII by taking adverse employment actions against her as alleged in this Complaint.

### COUNT III – BREACH OF CONTRACT

70. Plaintiff re-alleges and incorporates herein by reference each and every allegation set forth in the foregoing paragraphs as if fully rewritten.

71. In December 2015, Plaintiff Satterwhite and Defendant CMSD entered into a binding written Settlement agreement.

72. Plaintiff Satterwhite has performed all the conditions on her part to be performed, but Defendant CMSD has not performed its promises and has breached the settlement agreement.

73. Plaintiff Satterwhite suffered damages as a result of Defendant CMSD, acting through its agents within the scope of their employment, breaching the Settlement agreement.

### COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

74. Plaintiff re-alleges and incorporates herein by reference each and every allegation set forth in the foregoing paragraphs as if fully rewritten.

Mulhall Law, LLC

75. At all times relevant to this claim, Plaintiff Satterwhite was the employee of Defendant CMSD.

76. At all times mentioned herein, Plaintiff Satterwhite's superiors were acting within the scope of their employment by Defendant CMSD and had authority over Plaintiff Satterwhite.

77. During the course of Plaintiff Satterwhite's employment by Defendant CMSD, her superiors engaged in a targeted campaign of harassment against Plaintiff Satterwhite as set forth herein, including but not limited to issuing instructions for other officers to research criminal charges that could possibly be brought against her and creating an environment where officers openly stated that they would not back Plaintiff Satterwhite up on calls when her safety might be threatened.

78. The conduct of Defendant CMSD described herein was extreme and outrageous.

79. The conduct of Defendant CMSD, acting through its agents at the Department, as described herein was done deliberately and intentionally, with the purpose of inflicting severe emotional distress upon Plaintiff Satterwhite so that she would "fail" and "quit," or was done with reckless disregard of the probability of causing Plaintiff severe emotional distress.

80. As a direct and proximate result of the acts of Defendant CMSD, Plaintiff Satterwhite's has suffered now and in the future severe emotional distress, mental and emotional suffering, fright, anguish, shock, nervousness and anxiety that impacts Plaintiff Satterwhite's ability to function day-to-day, all to Plaintiff Satterwhite's damage.

WHEREFORE, Plaintiff Satterwhite prays for judgment against Defendant CMSD for: compensatory damages in amounts that will fully and fairly compensate her for her injury, damage, loss and expenses; for an award of liquidated damages; for punitive damages in an

Mulhall | Law, LLC

amount that will sufficiently punish and deter Defendants' wrongful misconduct; for attorneys' fees and costs of suit; for reinstatement, equitable and injunctive relief; and, for such other relief as the Court deems just.

## JURY DEMAND

A trial by jury is hereby demanded in this case with the maximum number of jurors allowed by law.

Respectfully Submitted,

*/s/ Brian Mulhall*
Brian C. Mulhall (#0092673)
Mulhall Law, LLC
8180 Brecksville Rd., Suite 205
Brecksville, Ohio 44141
P: (216) 586-4278
F: (440) 628-3165
Email: Brian@MulhallOhioLaw.com
Attorney for Plaintiff, Shalana Satterwhite